### UNION TRACTION. CO. v. FETTERS.

(Circuit Court of Appeals, Third Circuit. January 15, 1900.)

#### No. 10.

NEGLIGENCE—LIABILITY FOR CAUSING DEATH—ACTION FOR DAMAGES.

Defendant contracted for the construction of a smokestack, to consist of a shell of steel lined with brick. When the contractors for the steel part were near the top, those for the brickwork commenced work below, upon the assurance of the defendant that the workman should be protected from danger from those above, by a floor to be constructed above them. Such floor was constructed, but defendant, for a temporary purpose, cut a hole through it; and subsequently a timber falling from above passed through the floor and killed plaintiff's husband, who was a bricklayer working below. *Held*, that it was the duty of defendant to restore the platform to a safe condition within a reasonable time, and if it failed to do so, and the killing of the deceased was the result of such failure, defendant was liable therefor, and that both of such questions were properly submitted to the jury.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Thomas Leaming, for plaintiff in error.

James M. Beck, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This writ of error brings up for review the judgment of the circuit court for the Eastern district of Pennsylvania in an action which was there brought by the defendant in error to recover for the death of her husband,—caused, as alleged, by negligence of the plaintiff in error. The Union Traction Company, defendant below, entered into contracts for the erection of a power house. Morton, Reed & Co. contracted for the erection of the steel smokestack, and sublet the contract to the Connery Boiler Works. Keen, Frazier & Co. were the contractors for lining the stack with brick. The men of the Connery Boiler Works were working at the top of the stack while Keen, Frazier & Co.'s men were working at its bottom. Both were inside of the stack. When it was about 100 feet high, a heavy piece of lumber was dislodged from or near its top, which descended through its interior and struck and killed the plaintiff's husband, who was a bricklayer in the employ of Keen, Frazier & Co. The facts just stated are undisputed, and the instructions of the court concerning them are not, and could not be, complained of by the plaintiff in error; for the learned judge charged that, "if the man who dislodged this stringer at the top of the stack was negligent, * * * his negligence would not be a ground of recovery in the present case, because he-

is not to be taken as in the employ of the traction company." But there were additional facts. The contractors for the brickwork knew that it would be unsafe to work at the bottom of the stack while the other work was going on at its top, and it was not until they were assured by the chief engineer of the traction company "that they would be protected, by a floor which was to be constructed in the stack, while they were working underneath the iron workers," that they consented to proceed before the work overhead had been completed. Such a floor having, accordingly, been constructed, the defendant, shortly before the happening of the accident, caused an opening to be made in it to enable the engineer of the defendant to plumb the stack; but the court charged that this was rightfully done, and that the action was not maintainable if, "under all the circumstances in this case, the defendant used due and proper care to close the aperture,—to restore this platform to the condition in which it found it,"—and this question was left wholly to the jury to "determine according to all the circumstances as detailed by the witnesses."

The defendant submitted two points. The first was refused. The second was reserved, and, subject thereto, a verdict was taken for the plaintiff. Subsequently the defendant's motion for judgment notwithstanding the verdict was overruled, and judgment was entered for the plaintiff. The assignment of errors relates only to the refusal of the court to sustain these points, and therefore attention may be confined to them. The first one is in these words:

"There is no evidence that the beam fell through an opening. The uncontradicted evidence is that it broke through. Therefore whether or not an opening was made is immaterial, and your verdict should be for the defendant."

A verdict for the defendant upon the hypothesis upon which this proposition is founded could not have been directed without the assumption of facts which certainly had not been conclusively established. There was testimony from which it could reasonably be inferred that the beam "fell through an opening," or, if it "broke through," that such breaking resulted from the omission of the defendant "to restore this platform to the condition in which it found it." The question is not what we might consider to be the weight of the evidence, but whether there was any evidence upon which the verdict that was in fact rendered could be sustained; and upon this question we entertain no doubt. The refusal of the court to rule that under all the evidence the plaintiff was not entitled to recover would perhaps be sufficiently supported if rested upon the ground that the defendant's interference with the platform amounted to such an assumption of direction and control as to preclude it from asserting that the work was being done wholly by an independent contractor. Pender v. Raggs, 176 Pa. St. 337, 35 Atl. 1135. But our judgment rests upon a broader basis. It is not necessary to hold that the duty of the defendant to exercise reasonable care for the avoidance of injury to the bricklayer resulted from any doctrine which is peculiar to the relation of master and servant; for the general rule that every one is, in his acts and conduct, bound to be duly careful to avoid doing hurt to others, was made plainly applicable

by the circumstances of this case. Fetters did not go into the stack as a mere volunteer, but upon the invitation of the defendant, and in reliance upon its assurance that a protective platform would be provided to secure his safety. The defendant justified this reliance by erecting a suitable platform; but, having done this, its conceded right to impair the efficacy of the structure, temporarily and for a rightful purpose, was coupled with the duty to restore it to its original condition within a reasonable time after that purpose had been accomplished. The question whether the defendant did or did not discharge this duty, and whether, if it did not, the killing of Fetters resulted from its failure to do so, was properly left to the jury for determination. Bigelow, Cas. Torts (1875) notes, p. 708, and cases there cited. The judgment is affirmed.